THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY H. DORSEN, BENJAMIN SHEPARD and HAROLD SPIELBERG, Appellants.

First Department, November 15, 1935.

*Morton Milman* of counsel [*Charles Eno* with him on the brief; *Markewich & Null*, attorneys], for the appellant Harry H. Dorsen.

*Benjamin Shepard*, appellant in person.

*Charles H. Tuttle* of counsel [*Thomas E. Kerwin* with him on the brief; *Israel Spielberg*, attorney], for the appellant Harold Spielberg.

*Erwin N. Schapira, Deputy Assistant District Attorney*, of counsel [*William Copeland Dodge, District Attorney*], for the respondent.

O'MALLEY, J. I am of the opinion that the judgment of conviction of the defendant Spielberg must be reversed and the indictment dismissed. Concededly there is no evidence tending to show that he participated in the preparation of the false affidavit upon which the indictment is predicated or that he had any knowledge of any of its contents or that it was to be presented. There was no statute or rule of the department given the force of statute, which required the submission of the affidavit. There was at most a mere custom of which the defendant Spielberg was not shown to have knowledge. As to the other defendants, however, I am of opinion that the evidence was sufficient to justify their conviction.

I, therefore, vote to reverse as to the defendant Spielberg and to dismiss the indictment, and to affirm the judgment of conviction as to the defendants Dorsen and Shepard.

McAVOY, J., concurs; MARTIN, P. J., and MERRELL, J., dissent and vote to affirm as to all defendants; UNTERMYER, J., dissents as to the defendants Dorsen and Shepard, but concurs as to the defendant Spielberg.

UNTERMYER, J. (dissenting in part). I concur with Mr. Justice O'MALLEY in the reversal of the judgment of conviction as to the defendant Spielberg, but I dissent from the affirmance of the judgment of conviction of the defendants Dorsen and Shepard.

The indictment charged those defendants (together with one Burney, since deceased), as officers and agents of the Lexington Surety and Indemnity Company with the crime of exhibiting a certain false paper and instrument of evidence to the State Superintendent of Insurance, who is authorized by law to allow an increase in the capital stock of an insurance corporation, with intent to deceive and induce him to allow an increase of its capital stock from $250,000 to $300,000, in that said paper falsely declared that there was no agreement, arrangement or understanding made or existing whereby its assets were in any way pledged, in connection with said increase of capital.

On June 30, 1931, the Lexington Surety and Indemnity Company executed its "Certificate of Increase of Capital Stock," signed by Burney as vice-president and Shepard as secretary, reciting that the capital stock of the corporation was $250,000 and that the amount to which the capital stock was being increased was $300,000; that the number of shares of the company was being increased from 35,000 to 40,000 and their par value from seven and one-seventh dollars to seven and one-half dollars per share. Pursuant to section 36 of the Stock Corporation Law, this certificate was filed on July 10, 1931, with the Department of Insurance. The tax thereon was paid on July 13, 1931, and on that day the Superintendent of

Insurance executed in triplicate his formal approval of the application, the original of which was filed, a certified copy sent to the office of the appropriate county clerk, and a third copy to the office of the company. The certificate of approval, after reciting the filing by the company of the " certificate required by law," contains the following: " Now, therefore, I, George S. Van Schaick, Superintendent of Insurance of the State of New York, do hereby approve of the increase of capital stock of the Lexington Surety and Indemnity Company from Two Hundred and Fifty Thousand Dollars ($250,000) to Three Hundred Thousand Dollars ($300,000); increase in number of shares from Thirty-five Thousand (35,000) to Forty Thousand (40,000), an increase in par value of shares from Seven and one-seventh Dollars ($7 1/7) each to Seven and one-half Dollars ($7 1/2) each as required by the provisions of Section 38 of the Stock Corporation Law."

On July 31, 1931, there was deposited as additional capital in the Central Hanover Bank and Trust Company the sum of $50,000 to the credit of " Increased Capital a/c Lexington Surety & Indemnity Company." On August 4, 1931, the Superintendent of Insurance appointed one Moreines to report to him in the matter of verification of the increase in the capital stock of the Lexington Surety and Indemnity Company. Moreines visited the office of the company, examined the minutes of the meeting at which the increase in the capital stock was authorized, obtained from the bank a certificate that there was on deposit $50,000 and then prepared the affidavit described in the indictment as the false paper upon which the prosecution was based. It was signed and sworn to on August 6, 1931, by Dorsen as president, by Burney as vice-president, and by Shepard as secretary and treasurer, and then delivered to Moreines. In his report, attached to the affidavit, Moreines certified " as a result of this examination, that the sum of Fifty thousand ($50,000.00) dollars, representing the entire five thousand (5,000) shares of the authorized increased capital of this company was fully paid in."

At the trial it was shown that the $50,000 was secured by means of the execution of a series of financial guaranties, four loans having been obtained upon the security of bonds of the company. In convicting the defendants the jury must have found that the recital in the affidavit to the effect that no agreement existed whereby the assets, credit or financial guaranty of the Lexington Surety and Indemnity Company had been pledged in connection with the payment of the increased capital was false.

Assuming the affidavit to have been intentionally false, the question remains whether the defendants Dorsen and Shepard

could properly be convicted of the crime charged in the indictment. Section 661 of the Penal Law, for the violation of which they were convicted, provides:

" § 661. Frauds in procuring organization of corporations. An officer, agent or clerk of a corporation, or of persons proposing to organize a corporation, or to increase the capital stock of a corporation, who knowingly exhibits a false, forged or altered book, paper, voucher, security or other instrument of evidence to any public officer or board authorized by law to examine the organization of such corporation, or to investigate its affairs, or to allow an increase of its capital, with intent to deceive such officer or board in respect thereto, is punishable by imprisonment in a state prison not exceeding ten years."

Upon the conceded facts I do not know on what theory it can be held that the defendants exhibited a false statement to the Superintendent while " proposing " to increase the capital stock of the Lexington Surety and Indemnity Company. The statute does not render unlawful every false statement made in the course of an investigation conducted by a public officer or board in connection with the organization of a corporation or the increase of its capital stock. It is plainly limited to instances where the false statement is made to secure the organization of a corporation or the increase of stock. This is evident from the provision which limits its application to officers or persons " *proposing* " to do these things. It is equally evident from the heading of the section, which refers to frauds in " *procuring* " the organization of corporations.

Here the defendants were not " proposing " to increase the capital stock of the Lexington Surety and Indemnity Company when the false statement was submitted to the Superintendent. They were not guilty of " procuring " the increase in the capital stock by any fraud. What they did was to deceive the Superintendent in connection with an investigation thereafter initiated and conducted by him for the purpose of determining the circumstances under which the capital had been increased. It does not seem to me to be decisive whether, as the district attorney contends, " capital stock," as that term is used in the statute, is equivalent to " capital," for whatever may be its true significance the defendants were no longer " proposing " to increase either when the false statement was made. If it were necessary to decide that question I would be of the opinion that the statute has reference to an increase in the capitalization of corporations and not to an increase in the capital which is ordinarily secured by the sale of the authorized stock. Section 36 of the Stock Corporation Law, so far as material, provides that " A stock corporation may *effect* one or more of the following *purposes:* (A) To increase or reduce the

amount of its capital stock; * * * *By filing* a certificate which shall be entitled and endorsed ' Certificate of (stating the purpose or purposes) of (name of corporation) pursuant to section thirty-six of the stock corporation law.' " (Italics mine.) In the case of an insurance company the further condition is imposed by section 38 of the Stock Corporation Law that such a corporation " shall *not file* such a certificate unless it shall have indorsed thereon the approval of the superintendent of banks, if a banking corporation, or of the superintendent of insurance, if an insurance corporation." (Italics mine.) It seems to me to follow that when the certificate of increase was filed together with the Superintendent's certificate of approval, the capital stock of the corporation was increased. Certainly it was increased when $50,000 in cash, however derived, was paid into the corporation six days before the affidavit was made. It was in this respect and not in connection with the increase in its capital stock that the acts of these defendants were illegal. However this may be, the defendants were not on August 6, 1931, " proposing " to increase either the capital stock or the capital. The transaction, whatever its nature, had been concluded, except for the Superintendent's investigation of past events. If they may be held under these circumstances to be persons " proposing * * * to increase the capital stock of a corporation," then they may be held to be such many years after a certificate of increase and approval is filed and the capital, however secured, is paid in.

It is no answer to say that even after compliance with all the statutory requirements the Superintendent of Insurance does not recognize the increase as effective until he has investigated the facts. The statute itself declares by what method and at what point of time the increase in capitalization takes effect, and that moment in this particular case was July 13, 1931, and in no event later than July 31, 1931, when the sum of $50,000 was deposited in the corporate account. This interpretation need not render the statute ineffective. If the Superintendent desires to subject persons who practice such deceptions upon him to the penalties of the statute, he should require proof to be submitted before giving formal consent to the increased capitalization. This, it seems to me, is the procedure which the statute contemplates and this the offense for which it provides.

Judgment affirmed as to the defendants Harry H. Dorsen and Benjamin Shepard. (UNTERMYER, J., dissents.) Judgment reversed and indictment dismissed as to defendant Harold Spielberg. (MARTIN, P. J., and MERRELL, J., dissent and vote to affirm.) Settle order on notice.